**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **COALITION FOR A SUSTAINABLE DELTA,** *et al.*, <br><br>　　　　　　　Plaintiffs, <br><br>　　v. <br><br>**JOHN CARLSON, JR., in his official capacity as Executive Director of the California Fish and Game Commission,** *et al.*, <br><br>　　　　　　　Defendants. | 1:08-CV-00397 OWW GSA <br><br> ORDER GRANTING CENTRAL DELTA WATER AGENCY, ET AL.'S MOTION TO INTERVENE (DOC 19) |

## I.　INTRODUCTION

Central Delta Water Agency, South Delta Water Agency, Honker Cut Marine, Inc., Rudy Mussi, and Roubert Souza (collectively "Applicants") move for leave to intervene in this case as of right pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative to permissively intervene under Rule 24(b). (Doc. 19, filed April 15, 2008.)  Both Plaintiffs and State Defendants have filed statements of non-opposition and have agreed to submit the pending motion for decision without oral argument.  (Docs. 26, filed May 14, 2008; Doc. 27, filed May 16, 2008.)

1

**II.     BACKGROUND**

    **A.     The Claims in This Case**.

The Complaint for declaratory and injunctive relief challenges the adoption and enforcement of sportfishing regulations for striped bass in the Sacramento-San Joaquin Delta ("Delta"). These regulations were adopted by the California Fish and Game Commission ("CFGC") and are enforced by the California Department of Fish & Game ("CDFG")(collectively, "State Defendants"). (Doc. 1.) The district court summarized the Complaint in its recent notice of intent to relate this case to *NRDC v. Kempthorne*, 1:05-cv-1207, and *PCFFA v. Guitierrez*, 1:06-cv-00245:

> Plaintiffs are a coalition of agricultural water users in the San Joaquin Valley that depend on State Water Project ("SWP") water deliveries from the Delta, water districts that contract for SWP water with the Kern County Water Agency, and one individual who uses the Delta for recreational purposes. The crux of the Coalition's Complaint is that CFGC's and CDFG's maintenance and enforcement of striped bass fishing regulations cause the unlawful "take" of four species of ESA "listed" fish including the Sacramento River winter-run Chinook salmon ("winter-run Chinook"), the Central Valley spring-run Chinook salmon ("spring-run Chinook"), the Central Valley steelhead ("CV steelhead"), and the Delta smelt (collectively, "Listed Species"). Through the adoption and enforcement of the striped bass fishing regulations, which include bag and size limitations, CFGC and CDFG have allegedly allowed and encouraged the population of the non-native striped bass to thrive in Delta. According to the Complaint, the striped bass prey upon and consume the Listed Species, and this is one of several causes of the population declines of the Listed Species. The striped bass regulations encourage that species' population growth, which will, in turn, cause further decline of the population of the Listed Species.

(Doc. 7 at 2-3.)

Of particular note in the context of this application for intervention, Plaintiffs allege that "[t]he overall health of the

Delta ecosystem, including the health of populations of various species in the Delta, is in decline due to a number of factors, including degradation of water quality due to urban and agricultural runoff to Delta waterways, introduction of invasive and predatory species into the delta ecosystem, water withdrawals from the Delta...climate change, and other factors." (Doc. 1, ¶11.)

**B.  The Applicants**.

   **1.  Central Delta Water Agency**.

The Central Delta Water Agency ("Central Delta") is a political subdivision of the State of California, created by the California Legislature in 1973.  (Mussi Decl. ¶18.)  Central Delta's territory includes approximately 125,000 acres of land and associated waterways located entirely within the boundaries of the Delta, as defined by Section 12220 of the California Water Code, in the County of San Joaquin.  Although Central Delta's lands are devoted primarily to agriculture, its lands have other uses, including for commercial, navigation, transportation, residential, recreational, and habitat purposes.  (*Id*. ¶21.)

Striped bass are a "target species for recreational anglers in the Delta."  (*Id*. ¶26.)  Many of the land uses under Central Delta's jurisdiction are dependent upon or related to the recreational striped bass fishery.  (*Id*.)  For example, "[m]arinas with mooring and launching facilities for fishermen, commercial guides, bait and tackle shops, boat sales, service and rentals, restaurant and gas stations are some of the commercial uses related to striped bass" within Central Delta's jurisdiction.  (*Id*.)  Central Delta is statutorily empowered to

**3**

undertake "any and every lawful act necessary in order that a sufficient in-channel water supply of suitable quality may be available for any present or future beneficial use or uses of the lands within the agency." (Cal. Water Code App. §§ 117-4.1, 117-4.3(b).)

### 2. South Delta Water Agency.

Like Central Delta, South Delta is a political subdivision of the State of California, created by the Legislature in 1973. (Robinson Decl. ¶19.) South Delta includes approximately 148,000 acres of land and associated waterways located entirely within the boundaries of the Delta, in the County of San Joaquin. (*Id.*) South Delta's lands are also principally devoted to agriculture, but other uses, including commercial, navigation, transportation, residential, recreational, and habitat purposes. South Delta is also empowered to undertake "any lawful act necessary in order that a sufficient in-channel water supply of suitable quality may be available for any present or future beneficial use or uses of the lands within the agency." Cal. Water Code App. §§ 116-4.1, 116-4.2(b). As is the case with Central Delta, some lands within South Delta are used for "[m]arinas with mooring and launching facilities for fishermen, commercial guides, bait and tackle shops, boat sales, service and rentals, [and] restaurants and gas stations," dependent at least in part on the recreational striped bass fishery. (Robinson Decl. ¶¶ 20, 25.)

### 3. Honker Cut Marine, Inc.

Honker Cut Marine, Inc. ("Honker Cut"), is a California Corporation, owned and operated since 1989 as a marine business on King Island in San Joaquin County, on Honker Cut (a Delta

**4**

waterway). (Karnofel Decl. ¶¶ 3-4.) Honker Cut owns the real property on which it operates, which is situated on Honker Cut. (*Id.*) The business sells, services, stores, maintains, and launches boats used in the Delta for, among other things, fishing for striped bass. (*Id.* ¶¶ 4, 7.)

### 4. Robert Souza, Sr.

Robert Souza, Sr. is an avid angler residing in Stockton, California. (Souza Decl. ¶¶ 1, 4.) He regularly visits the Delta to fish for striped bass. (*Id.* ¶5.) Mr. Souza is keenly interested in the conservation of striped bass in the Delta, for educational, moral, spiritual, aesthetic, and recreational reasons, and asserts he would "personally suffer through the loss of the regulations and what little protection the State of California does provide for California striped bass." (*Id.* ¶¶ 6, 17.)

### 5. Rudy Mussi.

Rudy Mussi is a director of Central Delta Water Agency and a farmer within Central Delta. (Mussi Decl. ¶1.) He has lived his entire life in the Delta and depends on the San Joaquin River for water used on his farm. (*Id.* ¶6.) He and his family also use the Delta for recreational purposes, including fishing. (*Id.* at ¶7.) Mr. Mussi has a long-standing and deeply-held personal interest in the conservation of the Delta and its species, including striped bass. (*Id.* at ¶¶ 8-10.) As a director of Central Delta for the past 19 years, he has spent "countless hours of his own time" working on a multitude of issues relating to the health of the Delta ecosystem," and professes to "experience great happiness with the understanding I am working

1  toward a healthy Delta that will support all fish and wildlife
2  speices, including striped bass...." (*Id*. ¶¶ 11-12.)  Mr. Mussi
3  also states that the "striped bass in the Delta have
4  traditionally been an indicator species, depending directly on
5  the health of the Delta ecosystem they inhabit in order to
6  survive.  The precipitous declines in all fish populations in
7  past decades indicate the overall poor health of the Delta due to
8  the effects that the state and federal pumps have on the
9  ecosystem.  The failure to protect striped bass, and their
10 continuing decline, would result in the loss of an important
11 gauge of the health of the Delta." (*Id*. at ¶16.)

### III.  DISCUSSION

Applicants move to intervene as of right or, in the alternative, to permissively intervene.

**A.   Intervention as of Right**.

**1.   Legal Standard**.

Intervention is governed by Federal Rule of Civil Procedure 24.  To intervene as a matter of right under Rule 24(a)(2), an applicant must claim an interest, the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant.  *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1993). The Ninth Circuit applies Rule 24(a) liberally, in favor of intervention, and requires a district court to "take all well-pleaded, non-conclusory allegations in the motion as true absent sham, frivolity or other objections."  *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

A four part test is used to evaluate a motion for intervention of right:

> (1) the motion must be timely;
>
> (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and
>
> (4) the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council*, 66 F.3d at 1493.

### 2. Timeliness.

In assessing timeliness, courts in the Ninth Circuit must consider: (1) the current stage of the proceedings; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Applicants moved to intervene on April 15, 2007. (Doc. 19.) Existing parties are not prejudiced when "the motion was filed before the district court made any substantive rulings." *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). Here, no substantive rulings have been made in this case, no scheduling conference has been held, and no discovery has commenced. The motion to intervene is timely.

### 3. Significant Protectable Interests.

To demonstrate a "significantly protectable interest," "a prospective intervenor must establish that (1) the interest asserted is protectable under some law, and (2) there is a relationship between the legally protected interest and the

**7**

claims at issue." *Id.* Here, among other remedies, Plaintiffs seek to enjoin State Defendants from enforcing existing striped bass sport fishing regulations. (Doc. 1 at 27, Prayer 2.) It is undisputed that eliminating the ability of State Defendants to enforce existing striped bass sport fishing regulations would threaten the continued viability of the recreational striped bass fishery, in which each Applicant claims an interest.

Moreover, the two agency applicants, Central Delta and South Delta, claim that the Complaint contains factual assertions relating to water quality in the Delta and the health of the Delta ecosystem. For example, the Complaint alleges that "[t]he overall health of the Delta ecosystem, including the health of the populations of various species in the Delta, is in decline due to a number of factors, including degradation of water quality due to urban and agricultural runoff to Delta waterways, introduction of invasive and predatory species into the Delta ecosystem, water withdrawals from the Delta to support the needs of growing human populations in the Delta, the Bay Area, and the San Joaquin Valley, and Southern California, climate change, and other factors." (*Id.* ¶11.) To the extent that the district court considers and rules upon any of these matters in the context of this litigation, such rulings may implicate interest of the agency Applicants.

**4.   Impairment of Interests.**

Finally, disposition of this action may, as a practical matter, impair or impede Applicants' abilities to protect their interests. This requirement demands only a showing that the applicant "would be substantially affected in a practical sense

**8**

by the determination made in an action." *Southwest Ctr. for Biodiversity*, 268 F.3d at 822. It is undisputed that, should an injunction issue against State Defendants' enforcement of sport fishing regulations regarding striped bass, the Applicants' interests in the continued viability of that fishery would be significantly impaired or impeded.

### 5. Existing Parties' Ability to Represent Applicants' Interests.

The remaining issue is whether Applicants' interests are adequately protected by other defendants or defendant-intervenors. In assessing the adequacy of representation, the Ninth Circuit looks at three factors:

> (1) whether the existing parties will undoubtedly make all of the applicant's arguments;
>
> (2) whether the existing parties are capable of and willing to make the applicant's arguments; and
>
> (3) whether the applicant offers a necessary element to the proceedings that otherwise would be neglected.

*Id.* at 823. "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests may be inadequate....[T]he burden of making this showing is minimal." *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

It is "well-settled precedent in this circuit" that "[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *League of United Latin Am. Citizens*, 131 F.3d at 1305; *see also Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). This presumption is triggered here because Applicants and

State Defendants share the same ultimate objective of upholding the striped bass sport fishing regulations. However, the presumption is rebuttable upon a showing that the applicant and the existing parties "do not have sufficiently congruent interests." *Southwest Center for Biological Diversity*, 268 F.3d at 823.

Applicants interests diverge from existing intervenor-defendants' in several respects. First, State Defendants' answer makes no mention of provisions in the Central Valley Project Improvement Act ("CVPIA") that pertain to the restoration of the striped bass fishery in the Delta. *See, e.g.,* CVPIA 3406(b)(18), Pub. L. 102-575. Applicants' proposed answer raises these provisions as affirmative defenses (Doc. 20, filed April 15, 2008, at 13.) Applicants also maintain that they would best be able to represent the interests of individuals living, working and recreating in the Delta. In contrast, Applicants assert that the State Defendants cannot reasonably be expected to represent these interests, particularly given that the State is one of the two major exporters of water from the Delta. Although the State Defendants' intent to vigorously defend this action is not questioned, Applicants claim to have a unique perspective on these issues that is distinguishable from those of the state regulators. *See Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002)(finding federal defendant with interest in management of a resource did not have interests identical to an entity with economic interests in the use of

that resource).¹  No existing party can adequately represent the interests of the Applicants.

Applicants satisfy all of the requirements for intervention as a matter of right.  It is not necessary to address Applicants' alternative request for permissive intervention.

## IV.  CONCLUSION

Applicants' motion to intervene as a matter of right is **GRANTED,** conditioned upon strictly limiting their participation to issues about which they can provide unique information and/or arguments.  Further conditions on combined briefing length or other measures to avoid duplication may be imposed at the case management conference.

IT IS SO ORDERED.

**Dated:   May 28, 2008**                         **/s/ Oliver W. Wanger**
                                                  UNITED STATES DISTRICT JUDGE

---

¹ Applicants correctly assert that it is "beyond reasonable dispute" that the Applicants' interests will not be represented by Plaintiffs, in light of the fact that Plaintiffs seek to remove protections for the striped bass.