1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7             FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    COALITION FOR A SUSTAINABLE          1:08-CV-00397 OWW GSA
     DELTA, *et al.*,
10                                         MEMORANDUM DECISION RE
11        Plaintiffs,                      PLAINTIFFS' MOTION TO COMPEL
       v.                                  DOCUMENTS WITHHELD BASED ON
12                                         DELIBERATIVE PROCESS
     DONALD KOCH, in his official          PRIVILEGE (DOC. 87.)
13   capacity as Director of the
     California Department of
14   Fish and Game,

15        Defendant,

16
     CENTRAL DELTA WATER AGENCY,
17   et al.,

18        Defendant-Intervenors,

19   CALIFORNIA SPORTFISHING
20   PROTECTION ALLIANCE, et al.,

21        Defendant-Intervenors.

22

23                    I. INTRODUCTION

24        Plaintiffs move to compel production of 39 documents

25   withheld under the deliberative process privilege.  Doc.

26   87.  Counsel unsuccessfully attempted in good faith to

27   resolve the disputed issues, and the parties submitted a

28
                              1

1   joint statement of their dispute.  Doc. 87-2.  The

2   documents at issue have been produced for *in camera*

3   review.  *See* Doc. 93.  Oral argument was heard on

4   September 10, 2009.  Doc. 95.

5

6                    II. <u>SUMMARY OF THE CASE</u>

7        This case involves a challenge to California's

8   Department of Fish and Game's ("CDFG") enforcement of

9   state sportfishing regulations affecting striped bass

10  populations in the Sacramento-San Joaquin Delta ("striped

11  bass regulations").  Plaintiffs allege that CDFG's

12  enforcement of these regulations violates Section 9 of

13  the Endangered Species Act ("ESA"), because striped bass

14  prey upon four species listed under the ESA, namely, the

15  Sacramento River winter-run Chinook salmon, Central

16  Valley spring-run Chinook salmon, Central Valley

17  steelhead, and delta smelt ("Listed Species").  With

18  respect to the instant motion, the disputed factual

19  issues include:

20
            1.  The extent of striped bass predation on the
21          Listed Species;

22          2.  Whether the striped bass regulations result
            in a larger striped bass population than there
23          would be absent the regulations; and

24          3.  Whether the striped bass regulations
            increase striped bass predation on the Listed
25          Species.

26

27

28                              2

1

### III. <u>THE DISCOVERY AT ISSUE</u>

2      The documents in dispute here were withheld from

3   responses to Plaintiffs' first, second, fourth, and fifth

4   requests for production.  Plaintiffs served their first

5   request for production on October 30, 2008.  Defendant

6   served its response on January 9, 2009, and a

7   Supplemental Response on March 16, 2009.  Neither

8

9   response asserted the deliberative process privilege.

10      Plaintiffs served their second request for production

11  on February 5, 2009.  Defendant served its response on

12  March 15, 2009, but did not assert the deliberative

13  process privilege at that time.

14

15      Plaintiffs served their fourth request for production

16  on June 3, 2009.  Defendant responded July 8, 2009, to

17  which Defendant generally asserted the deliberative

18  process privilege in response to RFPs 59 & 60:

19          Defendant objects to this request on the grounds
            that it is overbroad, seeks information that is
20          not relevant to the subject matter litigation
            and not reasonably calculated to lead to the
21          discovery of admissible evidence, and seeks
            production of information that is privileged by
22          the attorney/client privilege, attorney work-
            produce privilege, and/or the <u>deliberative</u>
23          <u>process privilege</u>.

24
25  Doc. 87-2 at 11-12 (emphasis added).

26      Plaintiffs served their fifth request for production

27  on June 25, 2009.  Defendant served its response on

28
                              3

August 7, 2009, and in response to RFP #76, generally

asserted the deliberative process privilege:

> Defendant objects to this request to the extent
> [it] seeks information that is protected by the
> attorney/client privilege, the attorney work-
> produce privilege, or the <u>deliberative process
> privilege</u>, or any combination of these....

Doc. 87-2 at 13.

Defendant eventually produced a privilege log, which

detailed the grounds upon which the disputed documents

were withheld:

• Documents 34 through 44 and 46 through 54 are

emails between CDFG staff reflecting advisory

opinions, recommendations, and deliberations relating

to the issue of whether CDFG should recommend

amendments to the Striped Bass Policy to the

California Fish and Game Commission ("CFGF").

• Document 45 is an email between CDFG staff

reflecting advisory opinions, recommendations, and

deliberations relating to the issue of whether CDFG

should recommend changes to the striped bass slot

limit to CFGF.

• Documents 46 and 47 also included within the

first category, are emails between CDFG staff

reflecting advisory opinions, recommendations and

deliberations relating to a petition to uplist the

4

Delta Smelt to endangered status under the California Endangered Species Act.

• Documents Nos. 62, 68, 73, and 75 through 89 are drafts of bill analyses prepared for the Governor's Office and emails between CDFG staff reflecting advisory opinions, recommendations, and deliberations relating to what position CDFG should take in connection with Assembly Bill 1253.

IV. **ANALYSIS**

A. Summary of Plaintiffs' Position.

Plaintiffs argue:

(1) Defendant failed to make a timely and specific objection based on the deliberative process privilege, which waived the privilege;

(2) Defendant failed to comply with the procedural requirements necessary for invoking this privilege, thereby waiving the privilege;

(3) Defendant failed to demonstrate the two essential elements of the privilege:

(i) that the disputed documents are predecisional, and

(ii) that they are deliberative in nature;

(4) Even if the documents are covered by the qualified deliberative process privilege,

5

Plaintiffs' need for the documents and the public interest in their disclosure outweigh the CDFG's interest in secrecy; and

(5) Even if the documents and/or groups of documents are subject to this qualified privilege, the factual material in these documents should be separated and produced.

B.    Timeliness of Assertion of the Privilege.

Rule 34(b)(2) requires a party to respond to a request for production within 30 days, and the response must "either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  Rule 26(b)(5)(A) provides that, when claiming a privilege, a party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or other tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable the other party to assess the claim."  Rule 26(b)(5)(A). Rule 34 provides that, when objecting to a request to produce documents, the responding party's objection "must specify the part and permit inspection of the rest." Rule 34(b)(2)(C).

6

Plaintiffs complain (1) that Defendants failure to assert the deliberative process privilege in their initial responses to certain RFPs constitutes *per se* waiver, and (2) that Defendants' subsequent production of a privilege log seven months after service of Plaintiffs' first RFP was untimely, amounting to waiver.

Plaintiffs' *per se* waiver argument is without merit. A party's failure to assert a particular privilege in an initial response is not a *per se* waiver. "Neither Rule 26(b)(5) nor Rule 34(b) mandate waiver upon a party's failure to object." *First Sav. Bank, F.S.B. v. First Bank System, Inc.,* 902 F. Supp. 1356, 1360 (D. Kan. 1995). The Ninth Circuit rejected a *per se* rule that "failure to produce a privilege log in a timely manner triggers a waiver of privilege," noting that Rule 26's requirement for proper assertion of a privilege does not correlate with Rule 34's 30-day deadline for serving written responses to discovery requests, "nor does it explicitly articulate a waiver rule." *Burlington Northern & Santa Fe Railyard Co. v. United States*, 408 F.3d 1142, 1147 (9th Cir. 2005). Rather, a court should use Rule 34's 30-day time period as a "default guideline," for a "case-by-case determination" whether the assertion of a privilege is timely and sufficient.

*Id.* at 1149. *Burlington* instructs courts to take into account the following factors:

> 1)   The degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;
>
> 2)   The timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient);
>
> 3)   The magnitude of the document production; and
>
> 4)   Other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard.

*Id.*

*Burlington* concerned two issues of first impression: (i) whether "a general, boilerplate assertion of an evidentiary privilege in response to a discovery request" is effective to properly assert the privilege; and (ii) whether "the effect of untimeliness in properly asserting the privilege is to waive or otherwise abandon the privilege." *Id.* at 1147. With respect to the first issue, the Court found "that a proper assertion of privilege must be more specific than a generalized, boiler-plate objection." *Id.* On the second issue, the Court found that the failure to produce a timely privilege log, pursuant to "Rule 34's 30-day time limit," does not result in a *per se* waiver of the privilege. *Id.* at 1149.

8

Plaintiffs read *Burlington* to hold that where a party fails to assert a particular privilege in an initial written response in any manner, boilerplate or otherwise, it amounts to a *per se* waiver of that privilege, whether or not the privilege was invoked in a later-produced privilege log. This reading of *Burlington* is inconsistent with the Ninth Circuit's refusal to apply a per se waiver to a late-filed privilege log, even after finding the boilerplate assertions of privilege in the initial, written response to be insufficient. If asserting a privilege in a boilerplate manner is improper, then the party withholding documents in *Burlington* failed to properly assert particular privileges in their initial written responses. Nevertheless, the *Burlington* court forgave this initial failure and permitted the privilege log to assert the privileges for the first time.

This case is sufficiently analogous. Even though the initial written response to some of the earlier RFPs did not assert the deliberative process privilege, once Defendant had an opportunity to thoroughly examine the responsive documents, it determined that assertion of the privilege was appropriate and did so. Rather than applying a *per se* waiver rule, *Burlington* demands that

Defendant's actions be examined in light of the four
factor test.

      1.   **State Defendant's Assertion of the Privilege
          Enables the Plaintiffs and the Court to Evaluate
          Whether the Documents are Privileged.**

Defendant's privilege log describes the withheld
documents by providing the identities of the sender and
recipient and the general subject matter of the
communication.  In addition, submission of the disputed
documents to the Court *in camera* permits the Court to
evaluate the privilege claim completely and thoroughly.

      2.   **Under the Circumstances, the Objection Was
          Timely.**

The three remaining *Burlington* factors -- timeliness
of the assertion, magnitude of the production, and other
circumstances -- are appropriately discussed together.
Discovery in this case has been complex and voluminous.
Defendant has produced over 83,000 pages of documents,
including thousands of e-mail messages, all of which had
to be reviewed for privilege.  First Wordham Decl., Doc.
88, at ¶10.  Plaintiffs' first RFP, propounded on October
30, 2008, sought information dating back almost 30 years
to before 1980 in some cases.  The parties then engaged
in a lengthy meet-and-confer over the scope of
Plaintiffs' discovery requests.  Ultimately, the parties

agreed that all requests would be limited to years after 1980.  The parties also agreed that written responses would be due on January 9, 2009, with document production on January 21, 2009.   .

Defendant engaged in extensive efforts to collect, review and produce e-mails from numerous CDFG employees, potentially involving tens of thousands of e-mails.  The parties agreed that the discovery demands would be limited to e-mails from approximately eleven CDFG staff who worked primarily on striped bass issues (the "CDFG striped bass work group").  This limited the potentially discoverable emails to several thousand.

Over the next few months, CDFG staff worked to collect e-mails and provide them to counsel for review. After e-mails were provided to counsel by staff, the e-mails were reviewed for relevance and privilege and prepared for production.  During this review process, counsel discovered that some of the e-mail communications were subject to the deliberative process privilege, among other privileges.  On or about April 1, 2009, Defendant produced more than 3,500 emails, the vast majority of responsive, non-privileged e-mails.

Around mid-March, 2009, counsel for the Defendant determined that the Defendant needed to attempt to

11

recover e-mails and documents that had been deleted from CDFG staff computers between the time the plaintiffs served the Defendant with a notice of intent to sue on or about October 27, 2007 and the date the litigation was initiated on February 22, 2008, at which time CDFG imposed a litigation hold on CDFG staff e-mails and documents.  Counsel for the Defendant immediately began the process of obtaining a contractor to search and retrieve all such e-mails and documents.  The process of recovering deleted e-mails, reviewing them for relevance and privilege, and preparing them for production was completed on or about May 21, 2009, at which time they were produced to plaintiffs.  A privilege log, listing 54 e-mails withheld under claim of privilege, was then produced on May 28, 2009.  First Wordham Decl., Doc. 88, Exhibit Q.

On June 3, 2009, plaintiffs propounded RFP Set 4, which includes Request for Production No. 59 and Request for Production No. 60.  *Id*., Exhibit R.  Both requests seek production of documents relating to California Assembly Bill 1253.  In response to RFP Set 4, Nos. 59 and 60, the Defendant objected in part and asserted the attorney-client, attorney work product, and deliberative process privileges.  On or about July 23, 2009, counsel

for the state defendant served on plaintiffs a revised privilege log, listing the e-mails withheld from the response to RFP Set 4.  *Id.*, Exhibit T.

In total, Defense counsel has reviewed over 4,200 pages of e-mails.  Of these over 4,200 pages, approximately 150 pages, or a total of 89 e-mails, have been determined to be responsive but subject to a claim of privilege.  Approximately 4,060 pages of e-mails have been produced.  *Id.* at ¶ 10.

Discovery in this case has been voluminous and complex, particularly in light of the need to search for and retrieve deleted emails.  Once counsel began to review responsive emails, Defendant took a reasonable amount of time to determine that some of the communications were subject to the privilege.  Under this totality of circumstances, it appears that Defendant's claims of privilege were asserted as soon as reasonably practicable.  Under *Burlington*, the privilege has been appropriately asserted.

C.   **Compliance with Procedural Requirements for Invoking the Deliberative Process Privilege.**

Plaintiffs cite this court's 1998 decision in *Stockton East Water District, et al. v. Bureau of Reclamation*, Consolidated Cases: CV-F-93-5896 OWW and CV-F-96-5738 OWW DLB ("Stockton Order"), which held that

13

1   four requirements must be met before a claim of

2   deliberative process privilege may be sustained:

3            First, a formal claim of privilege lodged by the
4            head of the department having control over the
             matter must be made after actual personal
5            consideration by that officer.  An affidavit of
             the responsible agency official must explain
6            reasons for preserving the confidentiality of
             the governmental communication.  A specific
7            designation and description of the documents,
             i.e., a privilege log must be made in sufficient
8            detail to allow a reasoned determination as to
             the legitimacy of the claimed privilege.
9            Discoverable factual material must be separated
             from protected deliberative material.

10  Stockton Order at 8-9.  Plaintiffs assert that these

11  requirements were not met in this case.  However, the

12  district court specifically found in *Stockton* that these

13  requirements did not apply where the documents are

14  presented for *in camera* inspection.  *Id.* at 9 (citing

15  numerous cases).

16

17       Defendant submitted concurrently with the joint

18  statement the declaration of John McCamman, Chief Deputy

19  Director of the CDFG.  McCamman reviewed all of the

20  contested documents and, after describing these

21  documents, concludes that their disclosure would "inhibit

22  the free flow of ideas among CDFG staff" regarding

23  proposed changes to the Striped Bass Policy, the

24  possibility of adopting a striped bass slot limit, the

25  review of a petition to modify the species status of the

26  Delta smelt under the California Endangered Species Act,

27

28
                              14

and the provision of advice to the Governor's Office regarding pending legislation.  McCamman Declaration, Doc. 88-4, at ¶¶ 2-5.

Mr. McCamman's official position as Chief Deputy Director of CDFG meets the requirement that the attesting person is an "individual with overall responsibility for the administration of the agency."  *United States v. Rozet,* 183 F.R.D. 662, 665 (N.D. Cal. 1998).

As for the remaining procedural requirements, the privilege log in this case accurately describes the withheld documents and provides sufficient detail to permit a reasoned determination as to the legitimacy of the claimed privilege.  Finally, contrary to Plaintiffs' assertions, the withheld documents contain no discoverable factual information that must be separated from the deliberative material.

The privilege has been properly invoked.

D.   <u>Application of the Privilege to the Documents in Dispute.</u>

According to the Supreme Court, "the ultimate purpose of the long-recognized [deliberative process] privilege is to prevent injury to the quality of agency decisions." *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 151 (1975) ("*NLRB*").  The privilege is intended "to insure that a decision-maker will receive

the unimpeded advice of his associates.  The theory is that if advice is revealed, associates may be reluctant to be candid and frank."  *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 359-360 (1979).  In a recent decision addressing the privilege, the Supreme Court declared:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance "the quality of agency decisions" (citation omitted) by protecting open and frank discussion among those who make them within the Government.

*Department of the Interior, et al. v. Klamath Water Users Protective Association*, 532 U.S. 1, 8-9 (2001).  In addressing the application of the privilege to internal documents, the Supreme Court stated: "[i]t would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny."  *EPA v. Mink*, 410 U.S. 73, 87 (1973)(superceded by statute on other grounds, 5 U.S.C. § 552).

The Ninth Circuit has repeatedly affirmed this public policy to encourage frank and candid internal agency discussions.  *See, e.g.*, *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000); *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir.

1988) ("*NWF*").  Two conditions apply to the assertion of the deliberative process privilege in the Ninth Circuit:

> [U]nder the deliberative process' privilege, a document must be both (1) <u>predecisional</u> or antecedent to the adoption of agency policy and (2) <u>deliberative</u> meaning it must actually be related to the process by which policies are formulated.

*NWF*, 861 F.2d at 1117 (internal citations and quotations omitted)(emphasis added).  As the *NWF* court explained:

> These twin requirements recognize that the underlying purpose of this privilege is to protect[] the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.

*Id.*

"A document may be considered predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision."  *Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002).  "Material which predates a decision chronologically, but did not contribute to that decision, is not predecisional in any meaningful sense."  *Id.*  On the one hand, the "predecisional" requirement does not mandate that the agency asserting the privilege has taken steps to finalize its decision.  As the Supreme Court has observed:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability

17

> of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*NLRB*, 421 U.S. at 151, n.18.  One California district court concluded "that the Supreme Court meant to protect documents that were part of the decision-making process, regardless of a 'final decision'."  *Cal. Native Plant Soc'y v. EPA*, 251 F.R.D. 408, 411-412 (N.D. Cal. 2008).

On the other hand, the party opposing discovery must identify a specific decision or policy to which the withheld documents relate.  As the Ninth Circuit explained in *Maricopa Audubon Society v. U.S. Forest Service*:

> The [agency] argues that because agencies are involved in a continual process of self-examination, it need not identify a specific decision in which the ... report and the ... letter will culminate in an order for those materials to be "predecisional."  For this position, it relies entirely on a footnote in the Supreme Court's decision in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 ...  This cautionary dictum, however, does not justify the broad reading ... urged by the government ...  <u>**Thus, we are required to reject the government's primary argument that a continuing process of agency self-examination is enough to render a document "predecisional" and hold, instead, that the agency must identify a specific decision to which the document is predecisional.**</u>

108 F.3d 1089, 1094 (9th Cir. 1997)(emphasis added).  *See also Assembly of the State of Cal. v. U.S. Dept. of*

*Commerce*, 968 F.2d 916, 921 (9th Cir. 1992) ("Material which predates a decision chronologically, but did not contribute to that decision, is not predecisional in any meaningful sense.").

Documents are deliberative only if they are "actually related to the process by which policies are formulated." *NWF*, 861 F.2d at 1117.  For example, purely factual materials are generally not protected by the privilege. *Id.*  The important inquiry is whether disclosure of the document exposes "an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Assembly*, 968 F.2d at 920 (internal citation and quotation omitted).

   1.   **Documents that Concern Whether to Recommend to CFGF an Amendment to the Striped Bass Policy.**

Defendants assert that Documents 34 through 44, 46 through 54, and 62 concern whether to recommend to CFGF an amendment to the striped bass policy.  The documents submitted *in camera* reveal that the issue of whether CDFG should make such recommendations to CFGF was raised several times and considered over the course of more than a year, but never acted upon.

Plaintiffs maintain that Defendant's assertion of the privilege in connection with these documents is

1    insufficient under *Maricopa Audubon*.  Defendant refused

2    to specify what amendments were proposed to which part(s)

3    of the striped bass policy.  Because no information was

4    actually given about the substance or timing of the

5    putative decisions, Plaintiffs argue the discussion of

6    "an amendment to the Striped Bass Policy" is simply "part

7    of a continuing process of agency self-examination."

8

9         The *in camera* review reveals that most of the

10   communications in this category, namely Documents 34

11   through 44, 48 through 54, and 62 concerned <u>specific</u>

12   proposals to modify striped bass policy.  That these

13   proposals were never acted upon does not render the

14   assertion of the deliberative process privilege

15   ineffective.  This is not the kind of "continuing process

16   of agency self-examination" with which *Maricopa Audubon*

17   was concerned.  *Maricopa Audubon* simply demands that

18   withheld documents be related to a specific policy

19   proposal.  As to Documents 34 through 44, 48 through 54,

20   and 62, the discussion focused on specific proposals for

21   striped bass.  The documents were predecisional,

22   satisfying the first requirement.  These documents are

23   also deliberative because they concern the formulation of

24   policy.

25        Although it is a close call, a careful examination of

26

27

28
                                   20

documents 46 and 47 reveals no connection to any specific proposal to modify the striped bass policy.  Modifying the striped bass policy is mentioned as a possible remedy for concerns raised in these two emails, but no specific policy changes are discussed.  Documents 46 and 47 qualify as communications generated as part of a "continuing process of agency self-examination," to which the deliberative process privilege does not apply under *Maricopa Audubon*.

The deliberative process privilege is validly applied to Documents 34 through 44, 48 through 54, and 62, but does not apply to documents 46 and 47.

2.   <u>Document Concerning the Striped Bass Slot Limit.</u>

Document 45 concerns a particular proposal, which originated outside CDFG, to impose a slot limit[1] to protect striped bass.  The withheld communication addresses whether CDFG should support that proposal. This document is predecisional, as it concerned a specific proposal (whether to support the slot limit) that had not yet been adopted by CDFG, and deliberative, because it concerned the formulation of policy.  The privilege is properly asserted with respect to Document

---

[1] A slot limit allows anglers to take fish in a certain size range, but requires the release of anything smaller or larger.

21

45.

        3.    **Documents Relating to Petition to Uplist the Delta Smelt to Endangered Status under the California Endangered Species Act ("CESA").**

        Documents 46 and 47, in addition to discussing proposals to recommend changes to the striped bass policy, include a specific proposal to uplist the Delta smelt to endangered status under CESA.  Although these documents do tangentially discuss the CESA uplisting, they are not deliberative on this issue.  In other words, they do not discuss and/or deliberate over policy actions or decisions CDFG must take in relation to the CESA petition.  The privilege does not apply to documents 46 and 47 by virtue of their discussion of the CESA petition.

        4.    **Documents Reflecting Analysis of AB 1253.**

        Documents 68, 73, and 75 through 89 documents are all drafts of bill analyses prepared by CDFG for the Governor's Office and emails between CDFG staff relating to what position CDFG should take in connection with various drafts of Assembly Bill 1253.  *See* McCamman Decl. at ¶5.  These are all predecisional, as they concern drafts of a specific piece of legislation, and deliberative, because they concern the formulation of CDFG's policy toward that bill.  The privilege properly

22

applies to Documents 68, 73, and 75 through 89.

    5.    Conclusion Re: Application of the Privilege.

         The deliberative process privilege applies to all of

the documents withheld on that ground with the exception

of Documents 46 and 47.  Plaintiffs' motion to compel is

GRANTED as to Documents 46 and 47.

E.   Qualified Privilege Analysis:   Is Defendant's
     Interest in Non-Disclosure Overcome By The
     Plaintiffs' And The Public's Interest In Disclosure?

         The deliberative process privilege is a qualified

privilege.   To determine whether the qualified privilege

is overcome, courts usually consider four non-exhaustive

factors: (1) the relevance of the evidence; (2) the

availability of other evidence that contains the same

information; (3) the government's role in the litigation,

i.e., whether there is any evidence of bad faith and/or

misconduct; and (4) the extent to which disclosure would

hinder frank and independent discussion regarding

contemplated policies and decisions.  *FTC v. Warner

Commc'ns, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984).  The

court may also take into account (5) the interest of the

litigant, and society, in accurate judicial fact-finding.

*North Pacifica, LLC v. City of Pacifica*, 274 F. Supp 2d

1118, 1122 (N.D. Cal. 2003), and (6) the seriousness of

the litigation and the issues involved, *United States v.*

1    *Irvin,* 127 F.R.D. 169, 174 (C.D. Cal. 1989).

2          In the *Stockton* case, the district court refused to

3    permit disclosure after finding that the documents

4    withheld were only marginally relevant; the "information

5    sought [was] available ... from other sources"; the

6    "documents [did] not contain evidence of bad faith or

7    government misconduct"; permitting "disclosure would

8    chill the free flow of ideas between members of the

9    agency and effective cooperation in the development of

10   water policy by state and federal agencies in the state

11   of California;" and "the documents do not disclose 'the

12   smoking gun,' Plaintiffs' seek."   Stockton Order at 7-41.

13         Here, Plaintiffs assert that the documents may reveal

14   relevant documents and/or the "smoking gun" not found in

15   the *Stockton* case.   For example, Plaintiffs assert that:

16

17

18              [T]he Defendant's discussion of an amendment to
                the striped bass abundance policy will probably
19              discuss the key issues of striped bass predation
                on native fish and ESA implications.   Among the
20              documents already produced by CDFG was an email
                and Report from CDFG employee Marty Gingras,
21              CDFG's striped bass expert.   (Rubin Decl. ¶ 16,
                Exh. 7.)   In the email Marty Gingras reported
22              that the CDFG "discussed the Commission's
                striped bass policy as it relates to fishing
23              regulations, spending Striped Bass Stamp Funds,
                and ESA," and advocated revision of this policy.
24              (*Id.* (emphasis added).)   Moreover, the Report
                attached to his email complains that the striped
25              bass abundance policy is "harmful ... primarily
                because significant uncertainty remains about
26              the effect of striped bass predation on native
                fishes."   (*Id.*)
27

28   Doc. 97-2 at 46.   Plaintiffs maintain that this disclosed

                                  24

email is evidence that "Defendant is ... trying to hide key evidence and admissions based on the deliberative process privilege." *Id*. Similarly, Plaintiffs assert "it is highly likely that during the discussion of the striped bass slot limit, the CDFG discussed whether this proposed striped bass regulation would increase or maintain the striped bass population -- one of the primary issues in dispute." *Id*. at 47.

A careful review of all of the remaining disputed documents *in camera* proves Plaintiffs' contentions are meritless. Although the communications do touch upon the issue of striped bass predation upon native species, the withheld documents are primarily concerned with various ways to word policy recommendations so as to accurately reflect the state of the science. The communications do not reveal bad faith or any effort to withhold information from the public. Rather, they reveal a concern over giving policy advice that does not overstate the science. The withheld communications do not discuss scientific information in any detail, nor do they shed meaningful light on the ultimate issues in this case, e.g., whether the existing striped bass sportfishing regulations cause unlawful take of ESA listed species.

Moreover, in general, the withheld emails would not

add to information already disclosed.  For example,
Plaintiffs admit they are already in possession of an
email in which Marty Gingras advocated revisions to the
striped bass policy in light of ESA concerns.  Disclosure
of the vast majority of withheld documents would "hinder
frank and independent discussion regarding contemplated
policies and decisions," without enhancing the record in
any meaningful way.

Plaintiffs have not overcome the privilege as to the
remaining documents.


F.   <u>Plaintiffs' Request for Reasonable Expenses.</u>

Federal Rule of Civil Procedure 37(a)(5)(A) requires
the party or deponent whose conduct necessitated the
motion to compel "to pay the movant's reasonable expenses
incurred in making the motion, including attorney's
fees," unless "the opposing party's nondisclosure,
response, or objection was substantially justified."
Here, State Defendants' nondisclosure was substantially
justified.  Although Defendants must disclose two of the
39 challenged documents, this reflects the district
court's balancing of the parties' and public's interest,
and does not undermine Defendant's right to assert the
privilege as to all 39 documents in the first instance.

Plaintiff's request for fees and reasonable expenses is DENIED.

## V. CONCLUSION

For the reasons set forth above:

  (1) Plaintiffs' motion to compel is GRANTED as to Documents 46 and 47 and DENIED as to all other documents; and

  (2) Plaintiffs' request for reasonable expenses is DENIED.

Plaintiffs shall submit a form of order consistent with this memorandum decision within ten (10) days of electronic service.


SO ORDERED
Dated:  October 15, 2009

        /s/ Oliver W. Wanger
         Oliver W. Wanger
       United States District Judge